David M. MUMFORD, Plaintiff,

v.

Joseph C. ZIEBA, etc., Lorain County Common Pleas Domestic Relations Division, Defendants.

No. 1:90CV2243.

United States District Court, N.D. Ohio, E.D.

March 31, 1992.

Dennis J. Niermann, Edward G. Kramer, Kramer & Tobocman, Cleveland, Ohio, for plaintiff.

Pamela I. Theodotou, Lane, Alton, & Horst, Columbus, Ohio, M. Robert Flanagan, Office of the Pros. Atty., Elyria, Ohio, for defendants.

## MEMORANDUM OF OPINION AND ORDER DENYING PLAINTIFF'S AND DEFENDANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

KRENZLER, Senior District Judge.

This case is before this Court on the cross-motions for summary judgment filed by plaintiff, David M. Mumford, and by defendants, Judge Joseph C. Zieba and the Lorain County Common Pleas Court, Domestic Relations Division ("Domestic Relations Court").

In his complaint, Mumford claims that he is entitled to declaratory and injunctive relief and damages under 42 U.S.C. § 1983 because he was discharged from his position as a referee of the Domestic Relations Court based on his political affiliations, in violation of his rights under the first and fourteenth amendments to the United States Constitution. Mumford's motion for summary judgment asserts that the evidence shows that he was discharged because of his political affiliations, and that the first and fourteenth amendments protected him from such a patronage dismissal as a matter of law.

In their motion for summary judgment, Judge Zieba and the Domestic Relations Court contend that they did not discharge Mumford because of his political affiliations. They also argue that the first and fourteenth amendments did not protect Mumford from dismissal because political affiliation was an appropriate requirement for his position as referee. Finally, Judge Zieba argues that he is entitled to qualified immunity from Mumford's damages claims because the law did not clearly establish whether Mumford could be discharged based on his political affiliations.

The Court finds that material issues of fact preclude summary judgment for Judge Zieba on the issue of qualified immunity. At the time of Mumford's dismissal, it was clearly established that a governmental employee could not be discharged because of his political affiliation unless political affiliation was an appropriate requirement for the performance of the public office involved. Judge Zieba could not have reasonably believed that political affiliation was an appropriate requirement for the position of referee of the Domestic Relations Court. However, there is conflicting evidence as to whether political affiliation was a substantial or motivating factor in Judge Zieba's dismissal of Mumford. This material issue of fact precludes this Court from determining whether Judge Zieba could reasonably have believed that his dismissal of Mumford was lawful in light of the clearly established law.

In addition to the conflicting evidence regarding the reasons for Mumford's discharge, there are also genuine issues of material fact as to whether Judge Zieba acted under color of state law, and whether any constitutional violation resulted from a policy of custom of the Domestic Relations Court. These genuine issues of material fact also preclude summary judgment for any party on the merits of Mumford's complaint.

## I. FACTS

The evidentiary materials submitted by the parties disclose the following facts. Mumford was a referee of the Domestic Relations Court from January 22, 1979 until January 2, 1989. Throughout that time he was a registered Democrat.

In 1988, Mumford assisted Judge Henry T. Webber's campaign for reelection to the Domestic Relations Court, which was opposed by defendant Judge Zieba. During the campaign, Judge Zieba told Mumford, "don't get caught in the cross-fire."

Judge Zieba defeated Judge Webber in the November, 1988 election. On December 22, 1988, Judge Zieba sent Mumford the following letter:

Dear Mr. Mumford:

Please be advised that my term of office as Judge, Lorain County Domestic Relations Court, commences on Tuesday, January 3, 1989.

I wish to advise you that you will not be retained and your services will not be required at that time.

Thus, Mumford was terminated on the date Judge Zieba took office. Thirteen other court employees were discharged at the same time. Two new referees, both registered Republicans, replaced Mumford.

In answers to interrogatories, defendants identified six reasons for the termination of Mumford's employment:

1) The legal ability to terminate.
2) Substandard job performance, conduct and attitude.
3) Substandard professional reputation as referee in the legal community.
4) The position of referee required confidence, loyalty and policy making. Continued employment of the Plaintiff would be detrimental to the smooth, efficient, and just administration of the Domestic Relations Court.
5) Not wanting the Plaintiff to continue to be a member of the staff of the Domestic Relations Court.
6) Defendant's opinion of the Plaintiff, in the Defendant's official capacity as Administrative Judge of the Lorain County Court of Common Pleas, Domestic Relations Division.

In his deposition testimony, Judge Zieba stated that he did not believe that Mumford could be loyal to him because he had been loyal to Judge Webber. Although he did not personally observe Mumford's performance, lawyers had told Judge Zieba that Mumford was immature and that he displayed temper tantrums in court. Judge Zieba further stated that the backlog of cases before the court indicated that Mumford, the other referee, and Judge Webber had not performed effectively.

Under Ohio law, referees are appointed by the court. Ohio R.Civ.P. 53(A). The duties of a referee are described in Rules 53 and 75 of the Ohio Rules of Civil Procedure. Under these rules, a referee has the power to hear any issues referred to him by the court, to regulate all proceedings before him, to subpoena witnesses, rule on the admissibility of evidence, swear and examine witnesses, and report to the court on the matters referred to him. The referee's report is not a final decision of the court. Rather, the parties have an opportunity to object to the report, and the court may then either adopt, reject or modify the report, hear additional evidence, return the matter to the referee with instructions, or hear the matter itself.

Several present and former referees of the Domestic Relations Court testified in depositions that their responsibilities are largely independent of the judges for whom they work. They do not have daily, face-to-face contact with the judges. At most, they may spend an hour or two per week consulting with the judges about the

cases they are handling. They do not participate in court decisions about employment, funding, or other policy issues. They have separate offices, and are not privy to confidential materials in the judges' chambers.

## II. QUALIFIED IMMUNITY

In his motion for summary judgment, Judge Zieba contends that he is entitled to qualified immunity from Mumford's claim for damages because the law did not clearly establish whether Mumford could be terminated from his position as referee based on his political affiliations.

■ Judicial officers may be either absolutely or qualifiedly immune from civil liability for damages. A judicial officer is absolutely immune from liability for judicial acts within his jurisdiction. *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). However, where, as here, the judicial officer is being sued for administrative acts, not for judicial acts, absolute immunity does not apply. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Under these circumstances, a judge, like any government official, may assert qualified immunity from liability.

■ A government official is qualifiedly immune from liability for damages to a plaintiff who claims that the official violated his constitutional rights if it was objectively, legally reasonable for the official to conclude that his actions were lawful, in light of the clearly established law and the information he possessed at the time. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This test requires a two-part inquiry by the Court. First, the Court must determine whether the law clearly established the right which the plaintiff claims that the defendant violated. If the law was not clearly established, then the official is qualifiedly immune from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). On the other hand, if the law was clearly established, then the Court must proceed to the second part of the inquiry, and determine whether it was

objectively reasonable for the defendant to conclude that his actions were lawful, in light of that clearly established law. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039.

### A. *Clearly Established Law.*

■ A plaintiff bears the burden of proving that the defendant's conduct violated clearly established law. *Dominque v. Telb*, 831 F.2d 673 (6th Cir.1987). While it is not necessary for the plaintiff to show that the official's precise actions have been held unlawful in the past, the unlawfulness of the official's actions must have been apparent under pre-existing law. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

■ In this case, Mumford asserts that it was clearly established that the first and fourteenth amendments to the United States Constitution protected government employees from discharge based upon their political affiliation. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Supreme Court has held that political patronage practices—including politically motivated discharges, promotions, transfers, and recalls after layoffs—are generally unconstitutional because they infringe on the protected speech and associational rights of government employees. *Rutan*, 497 U.S. at ——, 110 S.Ct. at 2737–38, 111 L.Ed.2d at 67; *Elrod*, 427 U.S. at 358–60, 96 S.Ct. at 2682–83. However, an individual employee's first amendment rights may be outweighed by the need to maintain governmental effectiveness and efficiency when the "employee's private political beliefs would interfere with the discharge of his public duties." *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294. Accordingly, a governmental employee may be discharged because of his political affiliation if "party affiliation is an appropriate re-

quirement for the effective performance of the public office involved." *Id.*, at 518, 100 S.Ct. at 1295.

The Court finds that, at the time Judge Zieba decided to dismiss Mumford, it was clearly established that Mumford could not be discharged based upon his political affiliation unless political affiliation was an appropriate requirement for the position of referee of the Domestic Relations Court. Judge Zieba argues that it was not clearly established whether political affiliation was an appropriate requirement for the position of referee. However, the question whether political affiliation is an appropriate requirement for a particular position is a question of fact, not of law. *Soderbeck v. Burnett County, Wisconsin*, 752 F.2d 285, 288–89 (7th Cir.1985). The Sixth Circuit Court of Appeals has held that, to determine whether political affiliation is an appropriate consideration for a particular position, the court must examine the inherent duties of the position and the duties that the new holder of the position will perform. If the tasks are political or policy-oriented, involve access to confidential and political material, or demand political loyalty, then political considerations are appropriate. *Faughender v. City of North Olmsted*, 927 F.2d 909, 913–14 (6th Cir.1991). Plainly, this is a factual inquiry which relates to the objective reasonableness of Judge Zieba's dismissal of Mumford, and not to the question whether the law was clearly established.

### B. *Objective Reasonableness.*

Having determined that the law was clearly established, this Court must now turn to the question whether Judge Zieba could reasonably have believed that his dismissal of Mumford was lawful. Judge Zieba could have reasonably believed that it was lawful to dismiss Mumford if either (a)

the dismissal was not based on Mumford's political affiliation, or (b) the dismissal was based on his political affiliation, but Judge Zieba could have reasonably believed that political affiliation was an appropriate requirement for the position of referee. The Court will first consider whether Judge Zieba could have reasonably believed that political affiliation was an appropriate requirement for the position of referee; if so, the Judge Zieba will be entitled to qualified immunity regardless of his reasons for dismissing Mumford.

As this Court noted earlier, to determine whether political affiliation is an appropriate requirement for a particular position, the Court must examine the inherent duties of the position and the duties that the new holder of the position will perform. If the tasks are political or policy-oriented, involve access to confidential and political material, or demand political loyalty, then political considerations are appropriate. *Faughender*, 927 F.2d at 913–14.[1]

The evidence in this case shows that the referees of the Domestic Relations Court perform their work independently of the judges who refer matters to them. A referee of the Domestic Relations Court is not a personal employee of any particular judge. A referee is an employee of the Court; he or she hears matters for every judge there. In other words, a referee of the Domestic Relations Court is not the alter-ego of any single judge, but must be the alter-ego for all of the judges. Referees spend only a nominal amount of time discussing cases with the judges. Aside from the reports and recommendations they make, referees do not participate in the judges' own day-to-day decision-making process, nor do they participate in decisions about budgeting or employment or other court policy issues. Referees have their

---

1. Under this analysis, the Sixth Circuit has held that an elected official's personal staff, like a judge's bailiff or a mayor's secretary, may be discharged because of their political affiliations. *Faughender*, 927 F.2d 909; *Balogh v. Charron*, 855 F.2d 356 (6th Cir.1988). Similarly, a city attorney, who works closely with the mayor and other elected officials, may be discharged for political reasons. *Williams v. City of River Rouge*, 909 F.2d 151 (6th Cir.1990). Finally, the Sixth Circuit has held that political affiliation was an appropriate consideration in the discharge of an assistant county prosecutor who was statutorily given the "inherent policy-making responsibilities of the prosecutor." *Monks v. Marlinga*, 923 F.2d 423, 426 (6th Cir.1991).

own offices, and do not have access to the judges' confidential documents or communications.

Given the scope and independence of the referees' duties to the Court as a whole, their lack of participation in decisions concerning Court policy, and their lack of access to confidential material and communications, Judge Zieba could not have reasonably believed that political affiliation was an appropriate consideration in the employment of a referee of the Domestic Relations Court.[2]

■ Since Judge Zieba could not have reasonably believed that political affiliation was an appropriate requirement for the position of referee, this Court must next examine Judge Zieba's reasons for dismissing Mumford. If political affiliation was a substantial or motivating factor in the dismissal, then a reasonable official could not have believed that the dismissal was lawful. *Conklin v. Lovely*, 834 F.2d 543, 546 (6th Cir.1987). However, if other reasons motivated the dismissal, then a reasonable official could have believed that the dismissal was proper.

There is conflicting evidence as to whether political affiliation was a substantial or motivating factor behind Judge Zieba's dismissal of Mumford. Therefore, the Court cannot determine whether Judge Zieba's dismissal of Mumford was objectively reasonable under the circumstances. *See Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988). Material issues of fact thus preclude summary judgment for either Mumford or Judge Zieba on the question of qualified immunity.

### III. CONSTITUTIONALITY OF PATRONAGE DISMISSAL OF REFEREE

As this Court noted above, political affiliation is not an appropriate consideration in the employment of a referee of the Domestic Relations Court. However, there is conflicting evidence as to whether political con-

siderations were a substantial or motivating factor in Judge Zieba's dismissal of Mumford. This material issues of fact precludes summary judgment for either Mumford or the defendants on the merits of plaintiff's claims.

Furthermore, in order to prove his § 1983 claim against a governmental entity like the Domestic Relations Court, Mumford must demonstrate that the alleged violation of his constitutional rights was caused by a policy or custom of the Court. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). To succeed on his § 1983 claim against Judge Zieba, Mumford must show that Judge Zieba acted under color of state law. Neither party addressed these issues in their motions for summary judgment. These genuine issues of material fact likewise preclude summary judgment for either party.

### IV. CONCLUSION

The Court finds that material issues of fact preclude summary judgment for either Mumford or Judge Zieba on the question of qualified immunity. Genuine issues of material fact also preclude summary judgment for either plaintiff or defendants on the merits of plaintiff's claims against the Domestic Relations Court and Judge Zieba. For these reasons, the Court overrules both plaintiff's and defendants' motions for summary judgment. This case will proceed to trial on plaintiff's claims for damages and declaratory and injunctive relief against both defendants.

---

**2.** The result in this case probably would have differed if each referee was assigned to work with a single judge. In such a case, the referee's position would be similar to the position of the personal staff members at issue in *Balogh* and *Faughender*, whose close working relationship with an elected official required confidentiality and political loyalty.