David M. MUMFORD, Plaintiff–Appellee,

v.

Joseph ZIEBA, Judge, in his official and individual capacities; Lorain County Common Pleas Court, Domestic Relations Division, Defendants–Appellants.

No. 92–3430.

United States Court of Appeals, Sixth Circuit.

Argued March 23, 1993.

Decided Sept. 1, 1993.

Dennis J. Niermann (argued and briefed), Edward G. Kramer, Kramer & Tobocman, Cleveland, OH, for plaintiff-appellee.

John A. Fiocca, Jr. (briefed), Robert S. Dizenhuz, Lane, Alton & Horst, Columbus, OH, M. Robert Flanagan (argued and briefed), Office of the Pros. Atty., Elyria, OH, for defendants-appellants.

Mary Lee Leahy (briefed), Leahy Law Offices, Springfield, IL, for Nat. Employment Lawyers Assn. Amicus Curiae.

Before: NORRIS and SILER, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Plaintiff-appellee, David Mumford (Mumford-plaintiff) filed a 42 U.S.C. § 1983 action against the defendants, Judge Joseph Zieba (Zieba-defendant) and the Lorain County Common Pleas Court, Domestic Relations Division (Domestic Relations Court) charging that the defendants violated his First and Fourteenth Amendment rights by not reappointing him to the position of chief referee of the Domestic Relations Court. The district court denied summary judgment for Judge Zieba concluding that material issues of fact existed concerning Judge Zieba's immunity from suit. 788 F.Supp. 987. The defendants filed the instant interlocutory appeal challenging the district court's denial of their motion for summary judgment on the issue of qualified immunity.

Plaintiff served as a referee [1] in the Domestic Relations Court from 1984 to January 2, 1989.[2] In 1988, Mumford, a registered Democrat, assisted in the campaign to re-elect Democratic incumbent Judge Henry T. Webber (Webber), who ran against the Republican defendant Zieba in a non-partisan election for judge of the Domestic Relations Court. During the campaign, Judge Zieba advised Mumford, "don't get caught in the cross-fire." Subsequently, Zieba observed Mumford distributing campaign literature for Judge Webber in early November of 1988. Judge Zieba defeated Judge Webber in the November, 1988 election as Domestic Relations Court judge. His six-year term commenced on January 3, 1989. Beginning January 4, 1989, a second judge for the Domestic Relations Court began serving a six-year term. Oh.Rev.Code Ann. § 2301.02(C).[3]

On December 22, 1988, Judge Zieba notified Mumford by letter that his position as referee would terminate on January 3, 1989, when Judge Zieba assumed his office. Judge Zieba subsequently appointed two part-time referees, both Republicans, to hear domestic matters.[4]

On December 17, 1990, plaintiff initiated this action under 42 U.S.C. § 1983 against defendant Zieba in his individual and official capacities and against the Domestic Relations Court seeking monetary damages, as well as injunctive and declaratory relief.[5]

1. Pursuant to Ohio Rules of Civil Procedure 53 and 75, the court may appoint one or more referees to hear an issue or issues in any case in which the parties are not entitled to a trial by jury or in any case in which the parties consent in writing or in the record in open court, to submit an issue or issues to a court-appointed referee. A referee in the Domestic Relations Division of the Common Pleas Court is an agent and officer of the appointing court and is clothed with the powers and duties of the judicial office which appoints him. *Strietelmeier v. Angelo*, 66 Ohio L.Abs. 312, 113 N.E.2d 777, 779 (Ct.App. Muskingum Cty.1952); *Mennel Milling Co. v. Slosser*, 140 Ohio St. 445, 45 N.E.2d 306 (1942); 47 O.Jur.2d REFERENCES 84 § 2. Moreover, a referee is appointed at the discretion of the court and serves at the pleasure of the appointing authority. *Eudela v. Ohio Dept. of Mental Health & Mental Retardation*, 30 Ohio App.3d 113, 506 N.E.2d 947 (Franklin Cty.1986); Ohio Rev.Code Ann. § 2151.13 (Anderson 1990); Oh.R.Civ.P. 53. An employee who serves at the pleasure of an appointing authority can be dismissed from

his position without cause absent any discrimination or malfeasance. *Eudela*, 30 Ohio App.3d at 113, 506 N.E.2d at 947.

2. Prior to 1984, plaintiff was a juvenile court referee for five years. In Lorain County, the Juvenile Court is within the division of the Domestic Relations Court. Ohio Rev.Code §§ 2301.03(C) and 2151.07.

3. Prior to January 4, 1989, the Domestic Relations Court had only one judge hearing domestic and juvenile matters.

4. In addition to the two part-time referees appointed to hear domestic matters, Judge Zieba appointed three other referees to hear juvenile matters.

5. In order to assert a section 1983 claim, a plaintiff must prove that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was

Mumford charged that the defendants violated his First and Fourteenth Amendment rights by refusing to reappoint him to the position of chief referee of the Domestic Relations Court on January 3, 1989. Specifically, plaintiff asserted that he was not reappointed by Judge Zieba because he supported Zieba's opponent, Judge Webber, during the judicial election campaign.

On August 30, 1990, the defendants filed a motion for summary judgment arguing that Mumford was not entitled to First and Fourteenth Amendment protection from patronage dismissal because political affiliation was an appropriate requirement for his position as chief referee. Moreover, Judge Zieba argued that he was protected from personal liability by the doctrine of qualified immunity because the law was not clearly established on January 3, 1989 that a chief referee of a domestic relations court could not be discharged for reasons anchored in political patronage.

On January 28, 1991, defendant Domestic Relations Court filed a separate motion to dismiss asserting that the Lorain County Common Pleas Court was not a legal entity which may be sued under § 1983. The district court denied the motion to dismiss in a marginal order dated May 10, 1991.

Plaintiff filed a cross-motion for summary judgment on August 30, 1991, charging that the evidence proved that he was discharged because of his political affiliations and that he was entitled to First and Fourteenth Amendment protection as a matter of law. Subsequently, both parties filed memoranda in opposition to the opposing motions for summary judgment, and the defendants then filed a reply brief support of their motion for summary judgment.

In its memorandum opinion filed March 31, 1992, the district court concluded that material issues of fact precluded summary judgment in favor of Judge Zieba on the issue of qualified immunity. The court first determined that the law was clearly established in 1989 that the position of court referee was protected by the First Amendment pursuant to the dictates of *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). It further concluded that the question of political affiliation as a requirement for the effective performance of a particular position was an issue of fact, not law, which "relates to the objective reasonableness of Judge Zieba's dismissal of Mumford, and not to the question whether the law was clearly established." After examining the inherent duties of the position of a referee and the duties the incumbent performed, the court concluded that political party affiliation was not an appropriate requisite for serving as a Domestic Relations Court referee. It observed that the position of referee did not enjoy the policymaking or confidential status of a judge's bailiff, law clerk or private secretary.[6] It further determined that, in light of existing legal precedent, Judge Zieba could not have reasonably believed that political affiliation was an appropriate requirement for the office of referee of the Domestic Relations Court. Moreover, the court concluded that conflicting evidence existed concerning Zieba's political motivation for refusing to reappoint Mumford to his previous duties. Accordingly, the

---

caused by a person while acting under the color of state law. *Flagg Bros. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 1733–34, 56 L.Ed.2d 185 (1978). A plaintiff asserting patronage dismissal must prove that he is entitled to First Amendment protection and that the discharge was causally related to plaintiff's political activities. *Faughender v. North Olmsted,* 927 F.2d 909, 913 (6th Cir.1991); *Conklin v. Lovely,* 834 F.2d 543, 546 (6th Cir.1987). The Supreme Court has left to subsequent courts to determine, on a case-by-case basis, if an individual is entitled to First Amendment protection, i.e., whether political affiliation is an appropriate requirement for the effective performance of a public office. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63

L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Williams v. River Rouge,* 909 F.2d 151 (6th Cir. 1990).

**6.** However, the court noted that the result

probably would have differed if each referee was assigned to work with a single judge. In such a case, the referee's position would be similar to the position of the personal staff members at issue in *Balogh* and *Faughender,* whose close working relationships with an elected official required confidentiality and political loyalty.

court decided that "material issues of fact precluded summary judgment for Judge Zieba on the issue of qualified immunity."[7]

The defendants filed this interlocutory appeal which was limited to the single issue of Judge Zieba's qualified immunity. Since application of the doctrine of qualified immunity to a particular defendant is a question of law, this court reviews de novo the district court's disposition. *Long v. Norris*, 929 F.2d 1111, 1113 (6th Cir.), *cert. denied sub nom. Jones v. Long,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991).

It is undisputed that a judicial officer performing administrative acts, like any governmental official, may assert the defense of qualified immunity. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Governmental officials who perform discretionary functions generally are shielded from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights known to a reasonable person. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Using a fact-specific approach, the standard to be applied in resolving the 'clearly established law' predicate within the *Harlow* touchstone of 'objective reasonableness' is defined in *Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986): 'if officers of reasonable competence could disagree on this issue, immunity should be rec-

ognized.'" *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir.1992).

Thus, the issue of confrontation in this appellate review is not whether Judge Zieba actually violated Mumford's First and Fourteenth Amendment rights—an issue of fact implicating the merits of plaintiff's claim and reserved for the trier of fact. Rather, the issue is whether plaintiff's rights were so clearly apparent when he was terminated that Judge Zieba should have understood that his conduct at the time he refused to reappoint the plaintiff as a chief referee of the Domestic Relations Court violated Mumford's First and Fourteenth Amendment rights—a purely legal question for the trial judge to determine prior to trial.[8] *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Guercio v. Brody*, 911 F.2d 1179, 1183 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991); *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988); *Ramirez v. Webb*, 835 F.2d 1153, 1156 (6th Cir.1987).

In this circuit, a finding of a clearly established constitutional right must generally be supported by precedent from the Supreme Court or this circuit, or in the alternative, by decisions from other circuits. *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir.1988). "Although decisions of other courts can clearly establish the law, such decisions must both point unmistakably to the unconstitutionality of the

---

7. In addition, the district court concluded that material issues of fact precluded summary judgment on the merits of plaintiff's section 1983 claim.

8. The district court in the instant action incorrectly confused factual issues implicating the merits of plaintiff's substantive claim with the legal issue of qualified immunity. The district court rejected Judge Zieba's argument that he should be immune from suit for damages arising from an alleged politically motivated decision not to reappoint Mumford as a chief referee in the Domestic Relations Court. It determined that the law was clearly established that Zieba's decision violated Mumford's First Amendment rights under the holdings of *Elrod* and *Branti*. The district court then mischaracterized as a factual determination the legal question of whether the defendant should have known that his alleged acts violated clearly established rights existing at the time. Rather than directing its attention to

legal precedent in this and other circuits, the district court evaluated the inherent duties of a referee concluding that there was no genuine issue of fact that a referee was not a policymaking or confidential employee and thus entitled to First Amendment protection—a conclusion which addresses the merits of plaintiff's claim rather than the issue of qualified immunity. *See Faughender v. North Olmsted, Ohio*, 927 F.2d 909, 913–14 (6th Cir.1991) (court must examine the inherent duties of the position and the duties of the new incumbent to determine whether political affiliation is an appropriate consideration for appointment to a particular vacancy). It further concluded that summary judgment on the issue of qualified immunity was precluded because there was an issue of fact as to whether political affiliation was a substantial or motivating factor in Judge Zieba's dismissal of Mumford—again a factual issue implicating the merits of plaintiff's claim.

conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Cagle*, 957 F.2d at 1328.

█ In the instant action, the plaintiff and trial court relied solely on the Supreme Court decisions of *Elrod* and *Branti* to sustain their positions that existing precedent clearly established that a chief referee in a domestic relations court could not be denied reappointment to a vacant office for political reasons. Judge Zieba responded by asserting that at the time of Mumford's dismissal in early 1989, the law had not developed to notify a person of reasonable competence confronting similar circumstances that Judge Zieba's actions violated the First and Fourteenth Amendment rights of a person similarly situated to the plaintiff. Consequently, Judge Zieba urged that he was entitled to qualified immunity because he acted in an objectively reasonable manner. This court agrees that in January 1989, First Amendment law had not clearly established that a domestic relations court judge could not refuse to reappoint a chief referee for politically motivated reasons.

In early 1989, the relevant case law concerning politically motivated personnel decisions included *Branti*, 445 U.S. at 507, 100 S.Ct. at 1287; *Elrod*, 427 U.S. at 347, 96 S.Ct. at 2673; and *Balogh v. Charron*, 855 F.2d 356 (6th Cir.1988). In summary, the Supreme Court directed that political patronage practices, including politically motivated discharges, were generally unconstitutional because they infringed on the protected speech and associational rights of government employees. *Elrod*, 427 U.S. at 358–60, 96 S.Ct. at 2682–83. However, the Court reasoned that an employee's First Amendment rights could be outweighed by the need to maintain governmental effectiveness and efficiency when the employee's private political beliefs would interfere with the discharge of his public duties. *Branti*, 445 U.S. at 517,

100 S.Ct. at 1294. Thus, a governmental employee could be discharged because of his political affiliation if political affiliation was an appropriate requirement for the effective performance of the public office involved.[9] *Id.* at 515, 100 S.Ct. at 1293; *Elrod*, 427 U.S. at 372–75, 96 S.Ct. at 2689–90. A failure to reappoint an individual to a position subject to at-will discharge for any reason is equally impermissible if reappointment was denied because of the individual's exercise of First Amendment rights. *Branti*, 445 U.S. at 515, 100 S.Ct. at 1293. Thus, a failure to rehire a government employee constitutes a discharge even though, in form, the term of the appointment had expired. *Id.*

In *Elrod*, plaintiffs, all Republicans, were employees of the Cook County Sheriff's Office. *Elrod*, 427 U.S. at 350, 96 S.Ct. at 2678. The newly elected Democratic Sheriff discharged the plaintiffs solely because they did not support and were not members of the Democratic Party and had failed to receive the endorsement of its leaders. *Id.* at 351, 96 S.Ct. at 2679. In determining that the plaintiffs were terminated in violation of their First Amendment rights, a plurality of the Court in *Elrod* concluded that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690. The plurality noted that the government had a vital interest in ensuring that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration." *Id.* at 367, 96 S.Ct. at 2687. Accordingly, confidential employees in policymaking positions could be dismissed for political reasons. *Id.* at 372, 96 S.Ct. at 2689.

In affirming *Elrod*, the Court in *Branti* clarified the standard to be applied by government officials exercising personnel decisions. The Court noted that "it is not always

---

9. When analyzing whether political beliefs are an appropriate requirement for the position, a court considers the inherent duties of that position and duties that the new holder of that position will perform. *Faughender v. North Olmsted*, 927 F.2d 909, 913 (6th Cir.1991). As noted in *Williams v.* *River Rouge*, 909 F.2d 151, 153 n. 4 (6th Cir. 1990), political affiliation also can mean commonality of political purpose and support, not solely political party membership. *See Balogh v. Charron*, 855 F.2d 356 (6th Cir.1988).

easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered. Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294. Thus, the Court abandoned the labels of "policymaker" and "confidential employee," and stated that the relevant issue was "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295. Addressing the merits of plaintiff's claim, the Court concluded that the continued employment of a public defender could not properly be conditioned upon his allegiance to the political party in control of the county government. *Id.* Noting that the primary responsibility of the assistant public defender was to represent individual citizens in controversy with the State, the Court determined that "it would undermine, rather than promote, the effective performance of an assistant public defender's office to make his tenure dependent on his allegiance to the dominant political party." *Id.* at 519–20, 100 S.Ct. at 1295.

At the time of Mumford's discharge in January of 1989, the Sixth Circuit's contribution to this area of the law included *Balogh v. Charron*, 855 F.2d 356 (6th Cir.1988). In *Balogh*, this circuit concluded that a court bailiff could be discharged without violating the First Amendment because he was a confidential employee of the judge by whom he was employed. *Id.* The court emphasized that as a judicial aide the bailiff was privy to sensitive communications, acted as the judge's bodyguard, and was aware of case dispositions prior to the publication of decisions. *Id.* The test of confidential employment

> does not depend on the subjective view of the employee concerning the trust the judge reposes in him, nor does it depend on the need for intimacy or trust. It depends on the function of the job.

*Id.* Thus, in a *Balogh* climate where a confidential nonpolicymaking employee works in a close relationship with the elected official,

friction and animosities arising from political opposition may occur that create untenable job situations resulting in inefficient operation of the system.

The Second Circuit, in *Hawkins v. Steingut*, 829 F.2d 317 (2d Cir.1987), granted state officials qualified immunity when they refused to reappoint a plaintiff to the position of workers' compensation referee because federal law was not clearly established that prohibitions against political patronage dismissals extended to administrative law positions at the time reappointment was denied the plaintiff. The duty of a workers' compensation referee, which parallels that of a domestic relations court referee, included hearing and determining claims, conducting hearings and investigations, and issuing orders, decisions and determinations as required by the workers' compensation board. *Id.* at 318. Finding that *Elrod* and *Branti* developed a useful framework for assessing the constitutionality of patronage dismissals, the Second Circuit noted that courts have proceeded on a case-by-case basis to enumerate the permissible and impermissible instances of politically motivated employment decisions. *Id.* at 320. " '[I]dentifying generic categories of positions where partisan selection and rejection are permissible has ... proven to be an elusive and intractable task.' " *Id.* (quoting *Jimerez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241 (1st Cir.1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987)).

This circuit, in *Cagle v. Gilley*, 957 F.2d 1347, 1349 (6th Cir.1992), adopted a similar approach applied by the Second Circuit in *Hawkins* when deciding the issue of qualified immunity in political patronage cases. Plaintiffs in *Cagle* charged that the defendant, the Sheriff of Bradley County, Tennessee, violated their First Amendment rights by not rehiring them as deputies. Specifically, they alleged that they were not reappointed by the newly elected Sheriff because they supported his opponent during the election campaign for the office of Sheriff of Bradley County. *Cagle*, 957 F.2d at 1348. This circuit determined that reliance on the dictates of *Branti* and *Elrod* alone were insufficient to prove that the law was clearly established

in 1988 that a Sheriff would have clearly understood that he was under an affirmative duty to have refrained from refusing to reappoint the plaintiffs to the positions of deputy. *Cagle*, 957 F.2d at 1349. Concluding that the Sheriff was protected by the doctrine of qualified immunity, this circuit noted that the parties had not directed the court's attention to a single Supreme Court or Sixth Circuit decision that existed prior to August or September, 1988, wherein political affiliation was considered to be an unconstitutional or legally invalid reason for refusing a reappointment to the position of deputy sheriff upon application of *Elrod* and *Branti* principles. *Id.* It further determined that the law of the district court and other circuits remained unsettled on the question. *Id.* Accordingly, this circuit concluded that those rights were not clearly established in August and September, 1988 when the deputies were not reappointed by Gilley. *Id.*

As in *Cagle*, the plaintiff and the trial court in the instant action failed to direct this court's attention to a single case in this circuit or any other circuit which clearly established that political affiliation was not a proper job requirement for a chief referee of a domestic relations court. Moreover, this court is mindful of its decision in *Balogh* wherein it concluded that a confidential non-policymaking court bailiff did not enjoy the right to be free from patronage dismissals, which disposition supports Judge Zieba's position that he should be accorded qualified immunity under the circumstances of this case. A competent judge in the position of Judge Zieba could have reasonably concluded that the position of chief referee was a confidential position and thus not entitled to First Amendment protection. In addition, this circuit in recent years has noted that a wide number of public officials do not enjoy the right to be free from patronage dismissal. *See e.g., Monks v. Marlinga*, 923 F.2d 423 (6th Cir.1991) (assistant prosecutor); *Williams v. City of River Rouge*, 909 F.2d 151 (6th Cir.1990) (city attorney); and *Christian v. Belcher*, 888 F.2d 410, 415 (6th Cir. 1989) (county flood plain administrator). Accordingly, it cannot be said that any judge of reasonable competence in Zieba's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from refusing to reappoint Mumford in January of 1989 to the position of chief referee. Thus, Judge Zieba is entitled to the protection of qualified immunity.

Sixth Circuit precedent dictates that the defense of qualified immunity protects officials only from suit for monetary damages. *Hensley v. Wilson*, 850 F.2d 269, 273 (6th Cir.1988). "An official is not entitled to immunity from actions seeking only injunctive and declaratory relief." *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Spruytte v. Walters*, 753 F.2d 498 (6th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986). Thus, the granting of qualified immunity does not effect the merits of Mumford's claim.

Finally, although plaintiff argued that this court's jurisdiction is limited to the qualified immunity issue, it is clear that this circuit may consider other issues as well. *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir.1988) (per curiam). Because this court has held that a state court is not a "person" within the meaning of that term as used in § 1983, plaintiff's claim against the Lorain County Common Pleas Court must be dismissed. *Id.*

Accordingly, after reviewing the record in its entirety and the arguments of counsel, the disposition of the district court concerning Judge Zieba's entitlement to qualified immunity is hereby **REVERSED** and the case **REMANDED** to the district court for adjudication of the plaintiff's claim for injunctive and declaratory relief against Judge Zieba in his official capacity as Judge of the Lorain County Common Pleas Court. Moreover, plaintiff's claims against Judge Zieba in his individual capacity and against the Lorain County Common Pleas Court are hereby **DISMISSED**.