**John D. McCREA, Plaintiff,**

v.

**Joseph C. ZIEBA, et al., Defendants.**

No. 1:92 CV 2717.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 19, 1996.

802

Theodore F. Meckler, Cleveland, OH, for plaintiff.

Gregory A. White, M. Robert Flanagan, Elyria, OH, George D. Johnson, Frederick Morsan, Jr., Cincinnati, OH, for defendant.

## MEMORANDUM OF OPINION

NUGENT, District Judge.

On February 16, 1993, Plaintiff John D. McCrea filed an Amended Complaint against Defendants, Joseph C. Zieba, individually and in his official capacity as Judge of the Lorain County Common Pleas Court, Domestic Relations Division, and the Lorain County Common Pleas Court, Domestic Relations Division (hereinafter "Lorain County Domestic Relations Court"), seeking monetary damages, as well as injunctive and declaratory relief. Mr. McCrea alleges that the Defendants violated his First Amendment Rights under 42 U.S.C. § 1983 when Judge Zieba dismissed him from his position as Court Administrator in 1991 and demoted him from his position as Court Administrator in 1993. Specifically, Mr. McCrea alleges that these actions were taken by Judge Zieba because he supported Judge Zieba's opponent, Judge Webber, during the 1988 judicial election campaign and because they belonged to opposing political parties.

Mr. McCrea, a life-long Democrat, was first employed by the Lorain County Domestic Relations Court in April, 1968. The domestic relations court in Lorain has two judges who alternate on a yearly basis as Administrative Judge. In 1990, Judge David Basinski, as Administrative Judge, transferred the then Court Administrator of the Lorain County Court of Common Pleas, Domestic Relations Division, Mrs. Joyce Motsch, to a different position and appointed Mr. McCrea as Court Administrator. When Judge Zieba resumed the role as Administrative Judge in 1991, he dismissed Mr. McCrea and reappointed Ms. Motsch. In January, 1992, Judge Basinski again transferred Ms. Motsch and reappointed Mr. McCrea as Court Administrator. In January, 1993, Judge Zieba removed Mr. McCrea and reappointed Ms. Motsch as Court Administrator. He then appointed Mr. McCrea to the position of Intake Referee at a reduced rate of pay and responsibility.

Defendant Lorain County Domestic Relations Court filed a Motion to Dismiss Mr. McCrea's Complaint pursuant to FED. R.CIV.P. 12(b)(6) asserting that the Lorain County Common Pleas Court was not a legal entity which may be sued under 42 U.S.C. § 1983.

Defendant Zieba filed a Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 arguing that Mr. McCrea is not entitled to First and Fourteenth Amendment protection from patronage dismissal because political affiliation is an appropriate requirement for the position of Court Administrator. Moreover, Judge Zieba argues that he was protected from personal liability by the doctrine of qualified immunity because the law was not clearly established in 1991 and 1993 that a Court Administrator could not be discharged for reasons anchored in political patronage.

The motions were referred to a Magistrate Judge for a report and a recommended disposition. On March 2, 1995, the Magistrate Judge issued two Reports and Recommendations. In the first, the Magistrate Judge recommended that the Lorain County Domestic Relations Court's Motion to Dismiss be granted. In the second, the Magistrate Judge determined that material issues of fact existed as to whether Mr. McCrea was protected under the First Amendment from dismissal and demotion based on political affiliation which precluded summary judgment. The Magistrate Judge further determined that Judge Zieba was qualifiedly immune from suit with respect to an individual capacity claim because the law was not clearly established in 1991 and 1993 that a court administrator could not be dismissed, or demoted, for alleged political reasons. The Magistrate Judge thus recommended that the Court grant in part and deny in part Judge Zieba's Motion for Summary Judgment.

Mr. McCrea did not object to the Magistrate's recommendation as to the dismissal of the Lorain County Domestic Relations Court.[1] He did, however, object to the Mag-

---

1. On August 31, 1995, the Court, without objection, adopted the first Report and Recommendation of the Magistrate Judge and dismissed Defendant Lorain County Domestic Relations Court.

istrate's recommendation that Judge Zieba's Motion for Summary Judgment be granted in part under the doctrine of qualified immunity. Therefore, this Report and Recommendation of the Magistrate Judge, along with Mr. McCrea's objections thereto, are herein reviewed by the Court, *de novo. See* FED.R.CIV.P. 72(b).

## I.

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v.*

*Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

> In sum, proper summary judgment analysis entails:
> the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because

they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## II.

■■■ Qualified immunity is an affirmative defense to § 1983 liability. *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987). Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine recognizes that government officials need to perform their duties without fear of litigation and to be able to reasonably anticipate if their actions will give rise to liability for damages. *Williams v. Com. of Ky.,* 24 F.3d 1526, 1541 (6th Cir.), *cert. denied,* 513 U.S. 947, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994). Until the threshold immunity question is resolved, discovery should not be allowed. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■■■ Ordinarily, to find a clearly established constitutional right, a district court within the Sixth Circuit must find binding precedent from the Supreme Court, the Sixth Circuit, or from itself. *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988). This is not to say, however, that an official action is protected by qualified immunity unless the specific action in question has previously be held unlawful by the Supreme Court, the Sixth Circuit, or this Court. *See McCloud v. Testa,* 97 F.3d 1536 (6th Cir. (Ohio 1996)).

■■■ As with summary judgment, the burden of proof shifts between parties in a case where a defendant asserts that he is qualifiedly immune from suit. Initially, as with all other civil cases, the plaintiff bears the burden of setting out claims sufficient to state a cause of action. Once the defendant responds with an assertion of qualified immu-

nity, the burden of proof then shifts to that defendant; he must show that no genuine issue of material fact exists which would defeat his claim of immunity. *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995). Once the defendant has done so, the burden shifts back to the plaintiff who must then allege and prove that the defendant official violated a clearly established right that any official in defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id.; accord Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir.1994). *See generally Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992). The ultimate burden remains with the plaintiff to show that the defendants are not entitled to the asserted immunity. *Washington v. Newsom,* 977 F.2d 991, 995 (6th Cir.1992); *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991).

▮ The First Amendment generally prohibits the dismissal of a public employee on the basis of political affiliation. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Supreme Court has recognized, however, that political affiliation is an appropriate job qualification for certain governmental positions. *Id.* "[T]he ultimate inquiry ... is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *see also Rice v. Ohio Dep't of Transportation,* 14 F.3d 1133 (6th Cir.) *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994). In making that determination, the Court must examine "the inherent duties" of the position in question and the "duties that the new holder of that position will perform." *Faughender v. City of North Olmsted,* 927 F.2d 909, 913 (6th Cir.1991). If this examination reveals that the position is inherently political in nature, then political affiliation is an appropriate requirement for the job. *Blair v. Meade,* 76 F.3d 97 (6th Cir.1996).

Unpublished Sixth Circuit precedent as of November 23, 1990, established that the position of deputy court administrator for probation fell within the *Branti* exception and therefore was not entitled to First Amendment protection. *Walton v. Michigan,* 918 F.2d 958, 1990 WL 182033 (6th Cir.(Mich.1990)). The Sixth Circuit Court determined that party affiliation is an appropriate requirement for the effective performance of the position of deputy court administrator for probation, even though position was not a major policy-making one, since the position required the deputy court administrator to work under the chief judges's general direction in discharging her duties and because it was through the deputy court administrator that the chief judge exercised his "administrative superintending power and control" over personnel in that division.

In this case, Defendants rely on the affidavit of Judge Zieba, the Rules of the Court of Common Pleas, Domestic Relations Division, the Ohio Judge's Resource Manual prepared by the Ohio Judicial College and the deposition testimony of Judge Zieba and Judge Basinski to support their argument that party affiliation is an appropriate requirement for the effective performance of the position of Court Administrator of the Lorain County Common Pleas Court, Domestic Relations Division.

Rule 1 of the Rules of the Court of Common Pleas, Domestic Relations Division, Lorain County, Ohio, provides, in pertinent part, as follows:

Pursuant to the Ohio Rules of Superintendence, the presiding judge shall have the general superintendence of the business of the court and shall classify and distribute it among the judges. Every person appointed by the Court Administrator under the presiding judge or a particular administrative judge of each division of the court, shall be amenable to the direction and discipline of the Court Administrator, except for bailiffs, court constables, support personnel and court referees admitted to practice law in the state of Ohio.

Rule 2 of the Lorain County, Ohio Rules of The Court of Common Pleas, Domestic Relations Division, further provides, in pertinent part, as follows:

(C) Pursuant to the Ohio Rules of Superintendence, the administrative judge shall be the presiding officer of his or her divi-

sion and shall have full responsibility for and control over the administration, docket and calendar of the division which he or she serves. He or she shall require such reports from each judge concerning the status of assigned cases as he or she may require to assist him or her in discharging his or her overall responsibility to the Chief Justice of the Supreme Court.

(D) The administrative structure of the Domestic Relations Court shall be as follows:

(1) The judge or judges of that division acting through the Administrative Judge shall be the Chief Administrative officer and all personnel to be hired for service within that branch of the court or the various departments of this court shall be employed by the Administrative Judge of this division with the exception that each Judge shall have the responsibility of hiring his or her own bailiff and such reasonable supportive personnel as may be reasonable to operate their court.

(2) In the structure of command, immediately answerable to the Judges of the Domestic Relations Division shall be a Court Administrator.

(3) The Court Administrator shall carry out the directives of the Administrative Judge and other Judges of this division and all persons appointed by the judges shall be amenable to the direction and discipline of the Court Administrator, excepting bailiffs and court constables, support personnel hired by individual judges and court referees admitted to practice law in the State of Ohio.

These rules establish that the Administrative Judge is responsible for the overall administration of the Domestic Relations Court including personnel matters. As was the case in *Walton,* it is through the Court Administrator that the Administrative Judge exercises his personnel powers. The Court Administrator serves as a conduit between the administrative staff and the Administrative Judge on confidential personnel matters. Looking at the function of the job of the Court Administrator, in this light, the Court cannot say that Judge Zieba erred in characterizing the job of Court Administrator as

one for which party affiliation is an appropriate requirement for the effective performance of the job. *Branti, supra* at 518, 100 S.Ct. at 1294–95; *Walton v. Michigan,* 918 F.2d 958, 1990 WL 182033 (6th Cir.(Mich.)). The Administrative Judge must feel confident that frank discussions of sensitive personnel matters will be kept confidential by the Court Administrator. The Administrative Judge must also feel confident that the Court Administrator will not bypass his authority and will bring personnel matters to his attention.

■ Accordingly, the Court holds that Judge Zieba is entitled to qualified immunity with respect to his termination and demotion of Mr. McCrea as the position of Court Administrator for Domestic Relations Court falls within the *Branti* exception.

■ Sixth Circuit precedent dictates that the defense of qualified immunity protects officials only from suit for monetary damages. *Mumford v. Zieba,* 4 F.3d 429, 434 (6th Cir.1993), citing *Hensley v. Wilson,* 850 F.2d 269, 273 (6th Cir.1988). "An individual is not entitled to immunity from actions seeking only injunctive and declaratory relief." *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Spruytte v. Walters,* 753 F.2d 498 (6th Cir.1985). Thus, the granting of qualified immunity does not effect the merits of Mr. McCrea's claim.

### III.

For the foregoing reasons, the Magistrate Judge's recommendation that Judge Zieba's Motion for Summary Judgment be granted in part under the doctrine of qualified immunity is adopted. Plaintiff's objections to that Report and Recommendation are hereby **OVERRULED.** The Court finds that Judge Zieba is qualifiedly immune from Plaintiff's monetary damage claim. Therefore, Defendant's Motion for Summary Judgment on the grounds of qualified immunity is **GRANTED.**

Defendant's Motion for Summary Judgment as to Mr. McCrea's declaratory and injunctive relief claims are **DENIED.** These claims are resolved in a Memorandum of

Opinion filed simultaneously with this Memorandum of Opinion.

IT IS SO ORDERED.