918 F.2d 958
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rose WALTON and John Walton, Plaintiffs-Appellants,
v.
STATE OF MICHIGAN, State Judicial Council, and Judge Adam A.
Shakoor, Defendants-Appellees.
 No. 90-1116.
 United States Court of Appeals, Sixth Circuit.
 Nov. 23, 1990.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and MEREDITH, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Rose Walton was the Deputy Court Administrator for Probation in Michigan's Thirty-Sixth District Court in Detroit. Defendant Adam A. Shakoor, the chief judge of the court, discharged her after she refused to request reassignment to another position. Although Judge Shakoor replaced her with another woman, Mrs. Walton and her husband brought a federal civil rights/Title VII sex-discrimination case against Judge Shakoor, the State of Michigan and the Michigan Judicial Council, alleging that the discharge violated both Title VII of the Civil Rights Act of 1964 and the United States Constitution. Pendant state-law claims were also asserted, including a claim by Mr. Walton for loss of consortium.
 
 
 2
 After extensive discovery proceedings, the defendants moved for summary judgment and the plaintiffs moved for partial summary judgment. The trial court (Julian A. Cook, Jr., J.) denied the plaintiffs' motion and granted the defendants', dismissing the state-law claims without prejudice and dismissing the federal claims on their merits. The plaintiffs have perfected a timely appeal. For the reasons indicated below, we shall affirm the judgment.
 
 
 3
 * The federal-law claim against the state and its judicial council rests on 42 U.S.C. Sec. 2000e-2(a). That section, which codifies a key provision of Title VII of the 1964 Act, makes it an unlawful employment practice for an employer to, among other things, discharge or otherwise discriminate against an individual because of the individual's sex.
 
 
 4
 Although administrative personnel of the Thirty-Sixth District Court are appointed by the court's chief judge and are subject to discharge by him,[1] they are actually employees of the judicial council. Mich.Comp.Laws Sec. 600.9101(1) ("The council is the employer of the employees of the judicial branch of state government....") The record indicates that Mrs. Walton's discharge was approved not only by Judge Shakoor, but by an authorized representative of the judicial council. If Mrs. Walton was discharged because of her sex, therefore, the judicial council would appear to have been guilty of an unlawful employment practice unless Mrs. Walton was excluded from the protection of Title VII by a specific statutory exception. See Armbruster v. Quinn, 711 F.2d 1332, 1339 (6th Cir.1983) ("Congress intended [Title VII] to cover the full range of workers who may be subject to the harms the statute was designed to prevent, unless such workers are excluded by a specific statutory exception.")
 
 
 5
 The judicial council contends that a statutory exception does apply here. The council unquestionably comes within Title VII's definition of an "employer," see 42 U.S.C. Sec. 2000e(b), but another provision, 42 U.S.C. Sec. 2000e(f), provides that "the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff...." (Emphasis supplied.) The judges of the Thirty-Sixth District Court are elected to public office by the qualified voters of a political subdivision of the State of Michigan, and the judicial council maintains that Mrs. Walton was chosen by the chief judge of the court to be on that officer's "personal staff."
 
 
 6
 Mrs. Walton does not deny that the court's judges are elected. She argues, however, that she was chosen for the probation post not by Judge Shakoor, but by Judge Theresa Doss, one of Judge Shakoor's predecessors as chief judge. She also maintains that the position from which she was discharged was not a "personal staff" position.[2]
 
 
 7
 Whether Mrs. Walton occupied a "personal staff" position is a question of federal law, as the district court correctly noted, but it is state law under which the duties and responsibilities of the person holding the staff position are determined. It is state law, likewise, that governs the question whether the employee serves at the pleasure of the chief judge and the extent to which the employee is subject to superintendence and control by the chief judge. On questions such as these, as on all questions involving the law of a particular state, we accord considerable deference to the views of a federal district judge who has practiced in that state and who lives and holds court there.
 
 
 8
 Under Michigan law, Judge Cook determined, the chief judge of a Michigan district court has plenary authority to hire and fire administrative employees. That authority is subject to whatever policies the judicial council may adopt, but, as Judge Cook noted, the judicial council was not shown to have adopted any policy that would have prevented Mrs. Walton from being discharged. "As director of the administration of the court," moreover, a Michigan chief judge, as we have seen, has "administrative superintending power and control" over administrative personnel, including the court's principal probation administrator. Mich.Ct.R. 8.110(E)(3)(d).
 
 
 9
 In Teneyuca v. Bexar County, 767 F.2d 148 (5th Cir.1985), a Title VII case cited by Judge Cook, summary judgment was granted against a female plaintiff who applied unsuccessfully for a job as Assistant Criminal District Attorney in Bexar County, Texas. The trial court held that the plaintiff had failed to make out a factual dispute over the character of the position as one on the "personal staff" of the Bexar County District Attorney, an elected official. In affirming the summary judgment, the Court of Appeals for the Fifth Circuit cited Curl v. Reavis, 740 F.2d 1323 (4th Cir.1984); Goodwin v. Circuit Court, 729 F.2d 541 (8th Cir.1984); Ramirez v. San Mateo County, 639 F.2d 509 (9th Cir.1981); and Owens v. Rush, 654 F.2d 1370 (10th Cir.1981), as sources for a nonexclusive list of factors that the court said may have a bearing on whether a complainant comes within the "personal staff" exception to the Title VII definition of an employee. Judge Cook found these factors instructive, and we quote them here:
 
 
 10
 "(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position." Bexar County, 767 F.2d at 151.
 
 
 11
 In analyzing these factors, Judge Cook found as a matter of Michigan law that the Chief Judge of the Thirty-Sixth District Court has plenary powers of appointment and removal; Mrs. Walton therefore served at the pleasure of the chief judge. Judge Cook also found it undisputed that Mrs. Walton was not responsible for establishing court policies; she merely implemented policies and procedures adopted by the court itself. Her job description, moreover, as characterized by Judge Cook, showed without dispute that Mrs. Walton was to "convey departmental policies, practices and procedures by regularly conferring with law enforcement agencies, attorneys and the public and civic organizations." Judge Cook thought it clear that Mrs. Walton thus had authority "to represent the 36th District Court as well as the Chief Judge [in] her contacts ... with the general public."
 
 
 12
 We are not persuaded that Judge Cook erred in any of these findings. We note, in addition, that although Chief Judge Shakoor may have chosen to exercise control over the probation administrator largely through others, thereby limiting the amount of personal contact between the chief judge and Mrs. Walton, "superintending power and control" remained with the chief judge. That being so, the "actual intimacy of the working relationship" was less significant than it might have been otherwise. A strained working relationship, moreover, could well have contributed to the decision to discharge Mrs. Walton in the first place.
 
 
 13
 The question of federal law presented here is a close one, especially in view of legislative history indicating that the statutory exceptions in the 1972 legislation that extended Title VII to the states as employers should be construed narrowly. See Joint Explanatory Statement of Management at the Conference on H.R. 1746 to Further Promote Equal Employment Opportunity for American Workers, 92nd Cong. 2nd Sess. (1972), reprinted in 1972 U.S.Code Cong. & Admin.News 2137, 2180. Noting, however, that Mrs. Walton was not asking for a jury trial on her Title VII claim; mindful of the deference to which Judge Cook is entitled on the underlying questions of state law; and believing it most unlikely that a full-blown trial would have left Judge Cook in any better condition to decide the basic question of federal law, we conclude that we ought not overturn either the decision that Mrs. Walton's was a "personal staff" position or the decision that there was no material issue of fact in this regard.
 
 
 14
 We see no merit in the argument that Mrs. Walton could not come within the "personal staff" exception because the particular chief judge who fired her did not happen to be the particular chief judge who had hired her. In excluding from the coverage of Title VII a staff person chosen by an elected official, the statute makes no exception for the situation where there happens to have been a change in the identity of the individual holding the elective office. The statute excepts one chosen for a personal staff job by "any" elected officer, without qualification; this cannot mean that a staff member automatically comes within the protection of Title VII whenever the appointing officeholder is replaced. Under the circumstances of this case, therefore, we conclude that the Title VII claim would fail even if Mrs. Walton could show that she was discharged because of her sex. As explained in the next section of this opinion, moreover, we do not believe she could make such a showing in any event.
 
 II
 
 15
 The federal-law claims against Judge Shakoor rest on 42 U.S.C. Secs. 1981, 1983 and 1985. Section 1981 guarantees "[a]ll persons ... the same right in every State and Territory to make and enforce contracts...." Section 1983 imposes liability on anyone who, under color of state law, subjects another to deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States. Section 1985 deals, among other things, with conspiracy to deprive another of the equal protection of the laws.
 
 
 16
 One of the rights secured by the Fourteenth Amendment is the right not to be denied the equal protection of the laws. The equal protection issue is thus common to Mrs. Walton's claims under both Sec. 1983 and Sec. 1985, and perhaps Sec. 1981 as well; we turn to equal protection next.
 
 
 17
 * Judge Shakoor articulated several non-discriminatory reasons for Mrs. Walton's discharge, including her supposed inability to communicate well and a managerial style about which other employees allegedly complained. Pointing to a substantial body of evidence indicating that she was in fact a very capable employee, Mrs. Walton argues that the reasons proffered for the discharge amounted to a pretext for sex discrimination.
 
 
 18
 Pretextual they may have been, but our examination of the record does not suggest that Mrs. Walton had any real evidence that the proffered reasons amounted to a pretext for ridding the staff of females, as opposed to a pretext for staffing the court with people who, irrespective of sex, were active political supporters of the chief judge. Mrs. Walton did offer the opinion testimony of a respected community leader who claimed to be able to tell that Judge Shakoor wanted to have a man at the head of the court "family" (that man being the judge himself, naturally), and that the judge tended subconsciously to stereotype "strong" professional women as undesirable. This witness frankly admitted that he did not believe Mrs. Walton was discharged because of her sex, however, and Judge Cook could find no meaningful evidence that Mrs. Walton would have been retained had she been a man. We have found none either.
 
 B
 
 19
 In addition to asserting that she was fired because of her sex, Mrs. Walton asserts that she was fired because of her "politics." It does not appear that she and the judge were adherents of different political parties, but Mrs. Walton says that she was dismissed because she did not campaign for Judge Shakoor's election, did not contribute to his election campaign fund, and did not assist him in his effort to be chosen chief judge. Citing Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), she contends that the First Amendment, as made applicable to the states through the Fourteenth, protected her against discharge for reasons such as these.
 
 
 20
 Judge Shakoor responds that one who holds a "political" post--e.g., a job entailing a "confidential" relationship with an elected official--does not enjoy the same sort of job protection that the Constitution is now thought to confer on others fortunate enough to have secured employment in the public sector. See Branti, 445 U.S. at 518. Judge Cook concluded that as a matter of law, Mrs. Walton was a "confidential employee." It was on this basis that he dismissed the Sec. 1983 claim in its First Amendment aspect.
 
 
 21
 Speaking through Chief Judge Merritt, this court has said that:
 
 
 22
 "[t]he test of confidential employment does not depend on the subjective view of the employee concerning the trust the judge reposes in him, nor does it depend on the subjective view of the judge concerning the need for intimacy or trust. It is a more objective standard. It depends on the function of the job." Balogh v. Charron, 855 F.2d 356 (6th Cir.1988).
 
 
 23
 Looking at the function of the job held by Mrs. Walton--a function as to which there is no significant factual dispute--we cannot say that Judge Cook erred in characterizing the job as "confidential."
 
 
 24
 It is true that Mrs. Walton was not a major policy-maker, but neither was the bailiff whom Balogh held to be a confidential employee. Mrs. Walton may not have been in daily contact with the chief judge, moreover, but she represented him in dealings with the public, and, by her own admission, she acted under his general direction in discharging her responsibilities for the management of the probation division. She reviewed the work of subordinate employees and apprised her superiors--including the chief judge--of problems and corrective measures in the personnel area. It was through Mrs. Walton, as manager of the probation division of the court, that the chief judge exercised his "administrative superintending power and control" over personnel in that division. A significant element of confidentiality is inherent in sensitive personnel work of the sort for which Mrs. Walton was responsible, and if Mrs. Walton was a member of the chief judge's "personal staff," we have no doubt that her position on that staff was "confidential" in character.
 
 
 25
 Mrs. Walton points out that the chief judges of Michigan's district courts are chosen every two years, and she argues that "the judicial system in the State of Michigan will be decimated by the turnover of department heads biannually." This argument, it seems to us, is misdirected. Whether department heads in Michigan's judicial system ought to enjoy the same protection accorded employees in Michigan's classified civil service is a question not for the federal courts, but for the Michigan legislature.
 
 
 26
 One of the great strengths of our representative form of government--a form of government that even the states of Central and Eastern Europe would now emulate--is that when large-scale problems of the sort foreseen by Mrs. Walton actually materialize, enterprising politicians generally find it advantageous to offer legislative solutions. Michigan's present civil service system was put in place by the legislature, after all, and not by the courts. Legislative solutions may themselves prove problematic, but so may judicial remedies--and when the solution does not purport to be based on the Constitution, the voters can at least get it changed if they think it needs changing. See Kelley v. Metropolitan County Bd. of Educ., 836 F.2d 986, 995-97 (6th Cir.1987), cert. denied, 487 U.S. 1206 (1988).
 
 C
 
 27
 The Fourteenth Amendment prohibits a state from depriving any person of property without due process of law. Mrs. Walton claims that she accepted the probation job on the express promise of Chief Judge Doss that she would not be discharged except for good cause. (Judge Doss did not recall giving Mrs. Walton any such assurance, but the making of the promise is a question of fact not susceptible to resolution in summary judgment proceedings.) On the strength of Judge Doss' express promise, plus additional "just cause" promises said to have been implied from the court's work rules and practices, and in light of statutory provisions that Mrs. Walton interprets as barring the sort of employment-at-will policy that she says the Thirty-Sixth District Court considered and rejected at one point, Mrs. Walton contends that she obtained a property interest in her job that could not be taken away from her except through procedures according her notice and an opportunity to be heard. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-41 (1985) (an employee who has been granted a property interest in continued public employment may not be deprived of it without due process of law).
 
 
 28
 Judge Cook, whose reading of Michigan's statutes is entitled to no less deference than is his reading of the state's caselaw, found no statutory basis for the claim that Mrs. Walton had been given a property interest in her job. We are not persuaded otherwise. Mich.Comp.Laws Sec. 600.9105, from which Mrs. Walton claims to benefit "indirectly," has no bearing on this case that we can discern. Neither does the statutory requirement that the state judicial council, when exercising its authority to establish personnel policies etc., "consider" the rates of compensation and other conditions of employment established for employees in the state's classified civil service. Mich.Comp.Laws Sec. 600.9104(3).
 
 
 29
 As to the promise made (we must assume) by Judge Doss, we see no basis for concluding that Judge Doss had authority to bind her successors not to discharge Mrs. Walton except for just cause. See Johnson v. City of Menominee, 173 Mich.App. 690, 434 N.W.2d 211 (1988) (municipal board exercising supervising control with power of removal cannot extend employment contract beyond board's life).
 
 
 30
 The state judicial council had authority to adopt a "just cause only" policy, but it never did so. If we assume that the council could and did delegate such authority to the court, the fact remains that the court itself never adopted a clear-cut "just cause only" policy. The court's employment committee considered and failed to act on a formal "employment-at-will" policy, but the committee's failure to act has only marginal relevance, at most. Employment-at-will is the norm; unless an employer has taken affirmative steps to curb its discretion in this respect, either the employer or the employee remains free to terminate the employment relationship. Valentine v. General American Credit, Inc., 420 Mich. 256, 258-59, 362 N.W.2d 628, 629 (1984).
 
 
 31
 Mrs. Walton maintains that prior to her discharge, the actual employment practices of the court were consistent with Judge Doss' personal views on the "just cause" question. Relying on Toussaint v. Blue Cross & Blue Shield of Mich., 408 Mich. 579, 292 N.W.2d 880 (1980), Mrs. Walton cites the court's past practices, the failure to adopt a formal "at will" policy, and the issuance by Judge Shakoor of work rules naming specific offenses that could result in discharge, among other things, as giving rise to an implied contract under which property rights protected by the Fourteenth Amendment were created.
 
 
 32
 Whether Toussaint's implied contract doctrine extends to employment in the public sector is a question on which the Supreme Court of Michigan has not spoken--and there are Michigan Court of Appeals decisions that seem to point in opposite directions. Compare Johnson v. City of Menominee, 434 N.W.2d 211, supra, with Engquist v. Livingston County, 139 Mich.App. 280, 361 N.W.2d 794 (1984). United States District Judge Avern Cohn, in an opinion that Judge Cook cited with approval, concluded that "[b]ecause of the unique characteristics of public employment, the doctrine of implied just-cause employment contracts is inapplicable to public or municipal employers." Willoughby v. Village of Dexter, 709 F.Supp. 781, 787 (E.D.Mich.1989). District Judges James Churchill and Douglas Hillman, on the other hand, have concluded that Toussaint is not necessarily inapplicable to public employees. See Merrell v. Bay County Metropolitan Transp. Authority, 707 F.Supp. 289 (E.D.Mich.1989) and Bennett v. Marshall Public Library, 1990 U.S.Dist. LEXIS 10872 (W.D.Mich. Aug. 16, 1990).
 
 
 33
 Because Michigan law remains unsettled as far as the applicability of Toussaint to public sector employment is concerned, Judge Churchill held that the individual defendant in Merrell was entitled to qualified immunity. Merrell, 707 F.Supp. at 295. Harlow v. Fitzgerald, 457 U.S. 800 (1982) teaches that officials performing discretionary functions are entitled to qualified immunity from civil damage actions where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. On the strength of Harlow, Judge Churchill concluded that the "unsettled nature of Toussaint as applied in the procedural due process context makes qualified immunity appropriate." Merrell, 707 F.Supp. at 295. We agree. It seems to us that Judge Shakoor (who is no longer on the bench) would be immune from the due process damage claim asserted against him in this case regardless of how the Michigan Supreme Court may ultimately rule on the applicability of Toussaint in the public sector.
 
 
 34
 Accordingly, and because we do not find the plaintiffs' remaining arguments persuasive, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Mich.Comp.Laws Sec. 600.8272(1) provides in pertinent part that "The chief judge of the district court in the thirty-sixth district shall appoint the employees of the state judicial council serving in the district court in the thirty-sixth district...." Mich.Ct.R. 8.110(E)(3)(d) provides in pertinent part that "As director of the administration of the court, a chief judge shall have administrative superintending power and control over ... all court personnel, with authority to ... hire, discipline, or discharge such personnel."
 
 
 [2]
 Mrs. Walton does not attempt to argue, as she might conceivably have done, that because 42 U.S.C. Sec. 2000e-2(a)(1) fails to use the word "employee," and provides instead that an employer is prohibited from discharging any "individual" because of sex, the statutory definition of an employee is irrelevant. No other court has addressed this potential linguistic pitfall, as far as we are aware, and the reason seems obvious. An "employer" could not possibly "discharge" an "individual" who was not in fact an employee, and if they thought about the issue at all, the drafters of 42 U.S.C. Sec. 2000e(f) doubtless assumed that an individual who was not an "employee" under Sec. 2000e(f) could not be heard to complain of a violation of Sec. 2000e-2(a)(1). Such an assumption is reasonable, in our view, given the familiar rule that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892), as quoted in United Steelworkers v. Weber, 443 U.S. 193, 201 (1979)