**Peggy SNYDER, Plaintiff,**

v.

**CITY OF LIMA, Defendant.**

**No. 3:98CV7205.**

United States District Court,
N.D. Ohio,
Western Division.

May 14, 1999.

David S. Kessler, Blaugrund, Herbert & Martin, Dublin, OH, for plaintiff.

Anthony L. Geiger, Lima, OH, Gregory T. Lodge, Thomas G. Pletz, Shumaker, Loop & Kendrick, Toledo, OH, for defendant.

## ORDER

CARR, District Judge.

This is an employment discrimination case in which plaintiff seeks relief under Title VII and Ohio law. This court has jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1367. Pending are defendant's motion for summary judgment (Doc. 18) and plaintiff's motion for partial summary judgment (Doc. 12). For the reasons that follow, defendant's motion for summary judgment shall be granted as to plaintiff's federal claims, plaintiff's state claims shall be dismissed without prejudice, and plaintiff's motion for partial summary judgment shall be overruled as moot.

## Background

Defendant is a charter city established pursuant to Article XVIII of the Ohio Constitution. (Doc. 1 ¶ 4.). Defendant is governed by a mayor (the Mayor) and nine-member City Council. (*Id.*) Executive and administrative authority is vested in the Mayor and legislative authority resides with the City Council. (*Id.*; Doc. 20 Tab 1 §§ 24, 65).

The Mayor hired plaintiff in April, 1990 as the Director of Human Resources. (Doc. 22 at 15–16). The Human Resources Department is one of several city departments, each of which is run by a Director who is appointed by and reports directly to the Mayor. (Doc. 1 ¶ 6.). Plaintiff continued to work in her position until the Mayor terminated her employment on February 12, 1998. (Doc. 22 at 15–16; Doc. 23 ¶ 14). Her position was exempt and unclassified, which means it was not subject to civil service procedures. (Doc. 22 at 22–23).

Plaintiff served at the pleasure of the Mayor, and considered herself a member of the Mayor's personal staff. (*Id.* at 23). She reported directly to the Mayor, and gave him advice about human resources issues on a regular basis. (*Id.* at 24–25).

After 1994, the City Council determined salary increases for plaintiff as well as the other Directors. (Doc. 20 Tab 2 Cunningham Aff. ¶ 3.). In 1997, all of the other department heads received a raise, but plaintiff did not, despite a favorable recommendation from the Mayor. (Doc. 22 at 62). The Mayor personally telephoned plaintiff to tell her about the City Council's decision. (*Id.* at 72–75). This lawsuit followed.

## Summary Judgment Standard

Defendant moves for summary judgment as to plaintiff's Title VII and Ohio law claims, and plaintiff moves for partial summary judgment as to two of her state claims. Summary judgment must be en-

tered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## I. Defendant's Motion

Defendant moves for summary judgment as to all of plaintiff's claims. Counts one and three are federal claims and counts two, four, five, six, and seven are state claims.

## A. Federal Claims

Plaintiff brings two claims pursuant to Title VII. Defendant argues that I need not reach the merits of those claims because plaintiff, as a member of the Mayor's "personal staff," is not an "employee" entitled to Title VII protection.

Under Title VII, the term "employee" connotes an individual employed by another except that the term does not include

any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or *any person chosen by such officer to be on such officer's personal staff,* or an appointee on the policy-making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f) (emphasis added).

Title VII does not define the term "personal staff." Rather, six factors are commonly used to determine whether a person falls within that category. *See Teneyuca v. Bexar County,* 767 F.2d 148, 151 (5th Cir.1985); *see also Walton v. Michigan,* No. 90–1116, 918 F.2d 958, 1990 WL 182033 (6th Cir.1990) (unpublished per curiam opinion) (using the six *Teneyuca* factors). The factors are:

(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca* at 151.

According to defendant, the Mayor is an elected official and plaintiff is a member of the Mayor's "personal staff" such

that she is not an "employee" under Title VII. Plaintiff responds by pointing out that the exception in 42 U.S.C. § 2000e(f) is to be narrowly construed, and "the determination of the 'personal staff' exception does not lend itself well to disposition by summary judgment." *Teneyuca* at 152. While she concedes that the first and fifth factors weigh toward the conclusion that she is a member of the Mayor's "personal staff," plaintiff relies on her own affidavit to show that the remaining factors weigh against such a conclusion. (Doc. 32 at 6; Ex. A).

With respect to the second factor, plaintiff admits reporting directly to the Mayor, but contends that she was also accountable to other officials. (Doc. 22 at 24; Doc 32 Ex. A ¶ 2.). As examples, she lists the City Council members who determined her salary increases after 1994, and elected officials whose employees she dealt with as the head of personnel administration. (Doc. 32 Ex. A ¶ 2). Plaintiff, however, fails to show that she was *personally* accountable to these or any other officials. Plaintiff does not show how, by being subject to the City Council's salary determinations, plaintiff was personally accountable to City Council members. The determinations occurred only once every year, and changes may have been based upon considerations completely unrelated to performance, such as the fact that funds were needed to pay for outside consultants. (Doc. 20 Tab 2 Cunningham Aff. ¶ 5). Further, plaintiff has not shown that the City Council had any power to reprimand or discipline her, and the Council certainly did not have the power to fire her. As for other elected officials, plaintiff does not show how, by dealing with employees, she had any personal contact with, let alone was personally accountable to, their superiors.

With respect to the third factor, plaintiff claims that she was not a surrogate for the Mayor in the eyes of the public. (*Id.* Ex. A ¶ 3.). Acting as a "surrogate" is quite different than acting as a "representative."

While she may not have been the Mayor's substitute, plaintiff admits that she "spoke for [defendant]." (*Id.*) When speaking for defendant, she necessarily represented its chief elected officer, the Mayor.

With respect to the fourth factor, plaintiff claims that she enjoyed some degree of autonomy and was not subject to the Mayor's control. (*Id.* Ex. A ¶ 4.). Her job description, however, belies this assertion. The description states that plaintiff performs her duties "[u]nder administrative direction" and is "required to follow the instructions and perform duties required by the position's . . . appointing authority." (Doc. 20 Tab 5). As plaintiff was appointed by and reported directly to the Mayor, she clearly performed her duties under his direction and control. Like plaintiff, the assistant prosecutor in *Teneyuca* certainly enjoyed some degree of autonomy which was not enough to preclude summary judgment. 767 F.2d 148.

With respect to the sixth factor, plaintiff claims she did not have an intimate working relationship with the Mayor. Specifically, plaintiff states that she "did not consult with [the Mayor] on a daily basis" and "was not an intimate and sensitive advisor on such matters as politics." (Doc. 32 Ex. A ¶¶ 4–5). Plaintiff does admit, however, that she and the Mayor "collaborated on Human Resources matters," and that she advised the Mayor on a regular ongoing basis. (*Id.* Ex. A ¶ 5.; Doc. 22 at 24–25). Plaintiff provides no support for the proposition that daily consultations and political advice are essential elements of an intimate relationship. Further, defendant presents evidence that the Mayor and plaintiff had a close working relationship. For example, after the 1997 City Council decision regarding plaintiff's salary, the Mayor called plaintiff at home, late at night, and in breach of a confidential executive session. (Doc. 13 at 72–74). The Mayor felt that he had to give plaintiff a "heads-up" to avoid "failing in [his] relationship with her," and he also met with

plaintiff early the next morning. (*Id.* at 74–75).

As shown by the discussion above, each of the six *Teneyuca* factors weighs toward the conclusion that plaintiff falls within the "personal staff" exemption to the definition of "employee." Also telling is plaintiff's own admission that she considered herself to be a member of the Mayor's personal staff. (Doc. 22 at 23). I find that plaintiff is not an "employee" under Title VII; consequently, her Title VII claims shall be dismissed as a matter of law. Defendant's motion for summary judgment is granted as to plaintiff's federal claims.

### B. State Claims

Because I am dismissing all of plaintiff's federal claims, I may decline to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Three of the claims involve complex issues of state public policy, and I believe they can be addressed more appropriately in state court. Plaintiff's state law claims shall be dismissed, without prejudice, to be refiled in state court.

### II. Plaintiff's Motion

Plaintiff's motion for partial summary judgment relates only to two state law claims. In light of the dismissal of plaintiff's state law claims, this motion shall be overruled as moot.

### Conclusion

For the foregoing reasons, it is hereby

**ORDERED THAT**

Defendant's motion for summary judgment (Doc. 18) shall be, and hereby is, granted as to plaintiff's federal claims. Plaintiff's state law claims shall be, and hereby are, dismissed without prejudice. Plaintiff's motion for partial summary judgment (Doc. 12) shall be, and hereby is, overruled as moot.

**So ordered.**