NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0882n.06

No. 12-4544

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | |
| JOANNE HOREN, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Oct 10, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JUDGE STACY COOK, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: **KEITH** and **SUTTON**, Circuit Judges; and **BLACK**, District Judge.[*]

**Black**, District Judge. Joanne Horen ("Horen") appeals the district court's grant of summary judgment in favor of Judge Stacy Cook ("Judge Cook"). Horen argues that the district court erred in determining: (1) that Horen was a member of Judge Cook's "personal staff"; and (2) that neither Lucas County nor Judge Cook was a party who could be sued for employment-related claims under the FMLA. We find that the district court appropriately granted summary judgment. As such, we **AFFIRM**.

**I. BACKGROUND FACTS**

Horen began working for the Lucas County Court of Common Pleas in December 1996 as a research law clerk or staff attorney for Judge Charles Wittenberg. In this position, Horen drafted

---

[*]Hon. Timothy Black, United States District Judge for the Southern District of Ohio, sitting by designation.

proposed opinions and orders that Judge Wittenberg used in deciding cases. Horen was Judge

Wittenberg's sole law clerk or staff attorney, as Horen did not recall the exact title of her position:

> At that time I don't know if it was a law clerk or a staff attorney position. They had different terminology for it . . . . [A]lthough we would cross and do work for other judges . . . you were mainly working for one particular judge that you were assigned to or hired by . . . .

(R 45 at 16).

> Horen described her position:

> I would read motions, read briefs that I had in front of me. I would research the issues that were brought up in the briefs. I would draft an opinion. That was kind of the day in and day out. If there was something I was concerned about, I would discuss it with Judge Wittenberg. I would go up to his office and we would discuss them until we came to a conclusion. Then I would complete the draft and turn it into him.

(R. 45 at 36).

Throughout her employment, Horen worked on the courthouse's first floor in an office with

other judicial law clerks and staff attorneys. Horen would call Judge Wittenberg, and later Judge

Cook, directly if she had questions. Horen only reported to the judge for whom she worked.

Horen recalled a few sporadic times when she completed assignments for other judges. This

usually occurred when the other judge's staff attorney was not available. According to Horen, the

staff attorneys "all covered for one another." (R. 45 at 34).

In 2007, Judge Cook was elected to her current position. Horen began working for Judge

Cook shortly after she took the bench. To establish continuity, Judge Cook requested that her staff

continue to work as they had before her arrival.

Judge Cook testified that Horen did not complete work in a timely manner. When Judge Cook confronted Horen, she responded with a contentious email that, Judge Cook stated, was typical of Horen's overall poor attitude during her time with Judge Cook.

Judge Cook found that Horen's work product did not meet her expectations. On one occasion, Horen failed to recognize mandatory statutory language. Because of her reliance on Horen's work, Judge Cook issued an opinion in contravention of the statute. Judge Cook thereafter granted a motion for reconsideration to correct the error.

In May 2009, Horen requested, and she was granted, two weeks of FMLA leave to care for her daughter after she underwent surgery. After her daughter's surgery, Horen learned she would need additional time off because her daughter's surgery was more extensive than originally expected. Horen received the additional leave time, which continued through August 2, 2009.

During her FMLA leave time, Horen had a conflict with the court administrator over how to fill out time sheets for any time worked while on leave. Judge Cook filed Horen's time sheets on her behalf. Horen claims Judge Cook was hostile toward her when she returned to work. After Horen's return, she immediately requested three weeks of vacation time. Judge Cook called Horen to discuss the request. Judge Cook claimed Horen again exhibited an inappropriate attitude during the call.

On August 13, 2009, Judge Cook met with Horen. Horen recalls a rambling, loud, and angry discourse from Judge Cook regarding her dissatisfaction with the backlog in work that Horen's

absence had created. Horen claims Judge Cook wished to terminate her after the meeting, but a court administrator persuaded Judge Cook not to because of FMLA concerns.

Judge Cook remembers the meeting differently. Judge Cook stated she tried to address Horen's poor attitude and deficient work product, but Horen resisted her attempts. Instead, Horen became extremely defensive and made accusations against Judge Cook. Horen brought up her FMLA leave, but Judge Cook did not initiate the discussion. Judge Cook responded, stating that the meeting did not concern Horen's FMLA leave, but related only to her work product and attitude since her return.

After the meeting, Judge Cook placed Horen on a ninety-day probationary period.

On December 1, 2009, Horen told Judge Cook she would need additional leave time because her daughter required another surgery.

On December 2, 2009, Horen attended a staff meeting during which a human resources employee told court personnel they needed to file weekly time sheets, to be signed by the employee's supervisor each Friday. During the meeting, Horen stated she would not be able to obtain Judge Cook's signature because Judge Cook was "never there." (R. 46 at 89-92; R. 45, Exs. 27, 28). Judge Cook learned of Horen's comment, and called other court employees, who confirmed what Horen had said.

Judge Cook met with Horen on December 9, 2009 to confront her regarding the comment. Horen denied making any comment critical of Judge Cook during the meeting. After realizing

Horen would not accept responsibility for her actions, Judge Cook decided to terminate her. Judge

Cook formally terminated Horen on December 16, 2009.

Horen timely appeals the order of the district court granting summary judgment in favor of

Defendant Judge Cook. Horen alleges a cause of action for FMLA retaliation.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Holloway v.*

*Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (*en banc*). Summary judgment is appropriate where there

is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

The evidence must be considered in the light most favorable to the non-moving party, but there must

be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). That is, there must be more than

a "mere existence of a scintilla of evidence" to satisfy the Plaintiff's burden. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

## III. ANALYSIS

A *prima facie* case of FMLA retaliation requires Plaintiff prove that: (1) she was an eligible

employee; (2) her employer is an "employer" under the Act; (3) she was entitled to leave under the

FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied

her FMLA benefits to which she was entitled or "somehow used the leave against her and in an unlawful manner." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).[1]

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" based on his or her inclusion in a protected class. 42 U.S.C. § 2000e-2(a)(1). Courts have limited Title VII's protections to individuals who are "employees." *Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004). Section 2000e(f) sets forth the parameters for who may be considered an employee for the purposes of bringing a discrimination claim under Title VII. 42 U.S.C. § 2000e(f). It provides in pertinent part:

> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.[2]

The following non-exhaustive list of factors is relevant to determining if Horen was a member of Judge Cook's personal staff: "(1) whether the elected official has plenary powers of appointment and removal; (2) whether the person in the position at issue is personally accountable to only that elected official; (3) whether the person in the position at issue represents the elected

---

[1] Horen concedes that Judge Cook is entitled to summary judgment in her personal capacity and seeks only to establish that Judge Cook is liable in her official capacity.

[2] "The FMLA expressly incorporates into its provisions the Fair Labor Standards Act's ("FLSA")...definition of 'employee.'" *Mitchell v. Chapman*, 343 F.3d 811, 826-27 (6th Cir. 2003).

official in the eyes of the public; (4) whether the elected official exercises a considerable amount of control over the position; (5) the level of the position within the organization's chain of command; and (6) the actual intimacy of the working relationship between the elected official and the person filing the position." *Walton v. State of Michigan*, No. 90-1116, 1990 U.S. App. LEXIS 20725, at *6-7 (6th Cir. Nov. 23, 1990) (quoting *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985)).[3] Despite the fact that the exemption is to be construed narrowly and involves a highly factual inquiry, *Teneyuca*, 767 F.2d at 152, summary judgment nevertheless may be appropriate when there is no genuine issue of material fact as to the applicability of the relevant factors. *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 158 (6th Cir. 2004). Plaintiff argues that the trial court erred in holding that she was a member of Judge Cook's personal staff, because her position did not meet all of the *Birch* factors.

As to the above factors, and the balancing test they set forth, the undisputed, material facts show that Horen is a member of Judge Cook's "personal staff" for FMLA purposes:

### 1. Plenary powers

Horen argues that no statute or ordinance provides Judge Cook with plenary powers of appointment and removal over staff attorneys. However, the handbook governing Horen's employment with the court explicitly states that staff attorneys are personal, at-will employees of

---

[3] "The 'personal staff' exception becomes less applicable the lower the particular employee's position because the exception was primarily intended to exempt the elected official's immediate subordinates or those 'who are his first line advisors.'" *Montgomery v. Brookshire*, 34 F.3d 291, 296 (5th Cir. 1994).

the individual judge for whom they work. In fact, the employment manual directs a staff attorney or law clerk to submit her resignation directly to the judge for whom she worked. The description of the staff attorney position states that staff attorneys report to their assigned judge, and are considered exempt professionals under the Fair Labor Standards Act. Such evidence is more explicit then any evidence available in *Birch*, where the Sixth Circuit held that Birch, as a magistrate, was a member of the probate judge's personal staff without the benefit of a handbook or job description. *Birch*, 392 F.3d at 168. Horen expressly stated that she was a member of Judge Cook's personal staff and that she was terminated by Judge Cook and no one else. The fact that Horen was "assigned" to Judge Cook does not change the analysis. *Walton*, 1990 U.S. App. LEXIS 20725 at 9-10 (no exception to definition of personal staff where employee was hired by previous office holder). Judge Cook had the option to terminate Horen and hire another staff attorney at any time.

Judge Cook acknowledged that when she took the bench, the court assigned Horen to serve as her staff attorney. Horen did not apply for the position, and Judge Cook did not interview Horen. However, as Judge Cook testified, she wished to retain the procedures and practices used by the prior judge. Considering both the language in the employment manual and Judge Cook's wish to maintain conformity with her predecessor, her failure to reject Horen and hire an outsider as her staff attorney did not show she lacked the authority to do so.

Case No. 12-4544
*Horen v. Cook*

### *2. Personal accountability*

As to Horen's personal accountability to the elected official, both the handbook and job description for a staff attorney show that Horen was a "personal and confidential employee for the individual judge." (R. 45-9). Specifically, Horen's job description listed her job purpose as follows:

> Works as a personal and confidential employee for an individual Judge. Performs legal research and provides writing, consulting, and editing assistance to the Judge in drafting judicial opinions. Analyzes legal issues at the direction of the Judge and tracks motions. Stays up to date on the latest case and statutory laws and keeps the Judge informed.

(R. 45-8). The court's employment manual also reads: "the relationship between a Judge and a...staff attorney[] or judicial law clerk requires absolute confidence in the confidentiality of information. This expectation of confidentiality extends beyond the term of employment." (Doc. 45-9).[4]

Moreover, Horen reported directly to Judge Cook. When Judge Cook was unhappy with Horen's work or attitude, Judge Cook scheduled a personal meeting with Horen. Judge Cook personally disciplined Horen and it was her ultimate decision to terminate Horen's employment. The fact that Horen also performed work for other judges and "covered for" other staff attorneys in their absences does not change the fact that she was ultimately accountable to Judge Cook. *See Birch*,

---

[4] Horen was accountable for reporting her hours to Human Resources and the Court Administrator. However, this fact alone is insufficient to establish that Horen was not accountable to Judge Cook.

392 F.3d at 159 (magistrate who worked for several judges ultimately remained personally accountable to her assigned judge).[5]

Considering all of these facts, the Court finds that that Horen had personal, direct accountability to Judge Cook.

### 3. Eyes of the public

A law clerk represents her judge in the "eyes of the public, as any attorney or person interacting with [the clerk] would know that she was working directly for [the Judge]." *Graves v. Wayne County Third Circuit Court*, No. 08-11168, 2008 U.S. Dist. LEXIS 60792, at *3 (E.D. Mich. Aug. 8, 2008). We find that the law clerk position in *Graves* and the staff attorney position in this case are not distinguishable. Horen held a position that an outsider would recognize represented Judge Cook in the eyes of the public.[6]

### 4. Control over the position

Horen argues that Judge Cook did not exercise the control and authority she had over Horen to any great extent. However, Horen acknowledges that Judge Cook had control of her workload and time, to the extent she desired to exercise that control. Judge Cook relied on Horen to perform

---

[5] By contrast, in *Marafino v. St. Louis County Circuit Court*, 537 F. Supp. 206, 211 (E.D. Mo. 1982), *aff'd* 707 F.2d 1005 (8th Cir. 1983), the court held that a "staff attorney" for the Juvenile Court, headed by an elected Circuit Court Judge, does not meet the "personal staff" exemption, where she worked in the legal department, was supervised by the legal department director, did not have a sensitive and intimate working relationship with the judge, did not have a high level of personal accountability to the judge, and was subject to hiring and firing by the Circuit Court *en banc*. *Id.* at 211.

[6] *See also Gupta v. First Judicial Dist. of Pennsylvania*, 759 F. Supp. 2d 564, 571 (E.D. Pa. 2010) (finding that as a law clerk, plaintiff represented the judge in the eyes of the public).

work she assigned, and her job primarily included drafting proposed opinions and orders for Judge

Cook's approval. Specifically, Judge Cook asked that Horen produce at least two decisions per

week and provide her with copies of case law used to support her draft decisions. Accordingly,

Judge Cook clearly had expectations for and relied upon Horen in order to fulfill her duties as judge.

### 5. *Level of the position*

Horen reported directly to Judge Cook, and due to the nature of her drafting duties, Horen

was an "immediate subordinate" and Judge Cook's "fist line advisor." *Birch*, 392 F.3d at 158.

Horen essentially argues that she was not Judge Cook's "personal staff" because she did not enjoy

Judge Cook's power in her absence. However, the statute and case law do not contain such a

requirement.

### 6. *Intimacy of working relationship*

"Congress intended for the personal staff exception to apply only to those individuals who

are in highly intimate and sensitive positions of responsibility on the staff of the elected

official." *Gunaca v. State of Texas*, 65 F.3d 467, 471 n. 4 (5th Cir. 1995). Horen maintains that her

autonomy in performing her duties explicitly destroys the intimate status of the relationship.

We find that the record indicates that Judge Cook heavily relied on Horen's work. The

relationship between a judge and his/her personal law clerk or staff attorney is one of particular trust

and confidence. For example, Horen retained confidential information related to all of Judge Cook's

cases. Additionally, part of Horen's routine was to check in with Judge Cook's courtroom upon

arriving at work to see what was going on that day. In fact, Judge Cook allowed Horen to call her "Stacy" at appropriate times.[7] The level of a staff attorneys' involvement in court affairs, coupled with the high degree of trust with intra-court confidentiality and decision making, show that Horen and Judge Cook shared an intimate working relationship.

In sum, Horen was permitted to take FMLA leave twice during her employment, first in 1998 and then in 2009. However, Horen's claim for FMLA retaliation fails because "the statute does not protect an attempt to exercise a right that is not provided by the FMLA." *Chen v. Grant County,* No. 09-329, 2011 U.S. Dist. LEXIS 22510, at *16 (E.D. Wash. Mar. 3, 2011).[8] In the aggregate, the relevant factors support a finding that Horen is exempt from Title VII as a member of Judge Cook's "personal staff."

The fact that Horen is exempt from Title VII is dispositive and therefore we decline to address whether Judge Cook is an "employer" under the FMLA or whether the trial court erred in dismissing Lucas County as a party.

## VI.  CONCLUSION

---

[7] However, the facts also indicate that Judge Cook and Horen rarely spoke face-to-face, and had no regular meeting times to review workload or workflow. Horen rarely appeared in Judge Cook's courtroom during hearings, conferences, or trials. Additionally, Horen worked in an area with other staff attorneys on a different floor from the actual courtroom. Still, on balance, these facts are insufficient to destroy the intimate status of the relationship.

[8] *See also Laurie v. Alabama Court of Criminal Appeals*, 88 F. Supp.2d 1334, 1348 (M.D. Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001) (holding that staff attorneys, along with law clerks and the elected judges for whom they are employed, are excluded from the statutory definition of "employee" under Title VII).

For the foregoing reasons, the district court's grant of summary judgment in favor of defendant is **AFFIRMED**.